## TIMOTHY WIGGIN *versus* THE SUFFOLK INSURANCE COMPANY.

In the case of a double insurance, by two insurers, the party insured may elect to consider each insurer as liable to bear a proportionate share of a loss, and recover accordingly ; or to require either of them to pay the whole ; in which latter case, the one who pays the whole or a disproportionate part of the loss, would have a remedy against the other for a contribution.

Where in such case the party insured commenced an action on both policies at the same time, and one of the insurers paid into court one half of the actual loss, (first making certain deductions by way of set-off,) and the insured took the money out of court, it was *held*, that this was *primâ facie* evidence, that he had made his election to consider each insurer responsible for one half of the sum actually at risk.

A vessel was insured by the defendants, by a policy providing that any " loss shall be paid in sixty days after proof and adjustment thereof, the amount of the premium note, if unpaid, and all sums due to the insurers from the insured, when the loss becomes due, being first deducted ; and all sums coming due being first paid or secur ed to the satisfaction of the insurers, they discounting interest for anticipating payment." At the same time the insured gave the defendants a bottomry bond on the vessel, with sureties. Subsequently a policy on another vessel was underwritten by the defendants for the same person, containing the like provision respecting sums due and coming due to the insurers, and a provision prohibiting the insured from assigning the policy without the insurers' previous consent. This second policy was assigned to the plaintiff, with their consent, they " reserving to themselves all the rights expressed in the policy regarding premium notes, debts, &c." The first policy was not assigned. In an action by the assignee of the second policy for a loss, it was *held*, that the insurers must deduct from a loss on the first policy, all premium notes due from the insured, whether given before or after the assignment of the second policy, and must deduct the balance of such loss from the sum due on the bottomry bond ; and that they had a right to set off the balance remaining due on the bond after such deduction, against the plaintiff's claim, without first resorting to the vessel bottomried or to the sureties on the bond.

THIS was assumpsit, to recover the sum of $ 10,000 insured by the defendants, for Barrett & Brown, upon property on board the brig Soule, at and from Boston to Antwerp. The action was commenced in April, 1835. The policy was dated the 8th of February, 1834. It contained the following clauses : " And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof ; the amount of the premium note, if unpaid, and all sums due to the company from the insured, when such loss becomes due, being first deducted ; and all sums coming due being first paid or secured to the satisfaction of the said president and directors, they discounting interest for anticipating payment." — " It is also agreed, that this policy

shall be void in case of its being assigned, transferred, ꝛꞁ pledged, without the previous consent in writing of the insurers."

At the trial the plaintiff produced in evidence the invoice and bill of lading of 800 bags of coffee, shipped by Barrett & Brown on board the Soule, on February 14th, 1834, which were valued at the sum of $ 17,185·19.

It was admitted, that the vessel sailed from Boston with this cargo, on or about the 14th of February, 1834, and had never since been heard from.

The plaintiff proved by a memorandum on the back of the policy, that the policy was transferred to him by Barrett & Brown, for a valuable consideration, on the 23d of June, 1834 ; and that the defendants assented to such transfer on the same day, by their memorandum in writing, also indorsed on the policy, in which they reserve " to themselves all their rights expressed in the policy regarding premium notes, debts, &c."

The defendants did not dispute their liability for a portion of the sum insured ; but they claimed the right to deduct by way of set-off : —

1. A premium note, dated January 2d, 1834, for the sum of $ 201, given by Barrett & Brown for a policy on the barque Kent.

2. A premium note, dated January 11th, 1834, for the sum of $ 121, given by Barrett & Brown for another policy on the Kent.

3. A premium note, dated January 8th, 1834, for the sum of $ 376, given by Barrett & Brown for a policy on property by vessels from La Plata.

4. A premium note, dated February 8th, 1834, for the sum of $ 126, given for the policy declared on in this action.

5. A premium note, dated September 26th, 1834, for the sum of $ 158·50, given by Barrett & Brown for a policy on the schooner Charlestown.

6. A premium note, dated October 1st, 1834, for the sum of $ 1, given for a policy on property from La Plata.

7. A bond, dated January 11th, 1834, given by Barrett & Brown as principals, and James Gibson and Z. B. Adams as sureties, to secure the sum of $ 8000 lent on bottomry of the barque Kent.

It was admitted by the defendants, that the Kent had arrived in Boston, and had not been taken possession of by them ; and that she was sold by Whitwell & Bond, auctioneers, by order of the assignee of Barrett & Brown, the defendants at the time giving notice in writing, of their lien, to Whitwell & Bond ; and it appeared that Bond gave an obligation to account to the defendants for the proceeds of the sale of the vessel. No suit had been brought by the defendants against the sureties on the bond.

Pelham W. Hayward, the secretary of the defendants, was called as a witness by them, and testified that the bond was unpaid ; and that a partial loss and a general average loss, amounting to the sum of $4995·05, with interest in addition, were due from the defendants to Barrett & Brown under the policies for which the premium notes, Nos. 1 and 2, were given. The defendants contended, that this amount should first be deducted from the sum due on the bond, and that the balance, together with the premium notes, should be deducted from the loss claimed in this action.

The plaintiff called Adams as a witness, who testified, that he was, and for several years had been, the owner of real and personal estate exceeding in value the sum of $8000, which was exposed to attachment.

The defendants offered evidence to prove, that an action was pending in this Court, in favor of the plaintiff against the American Insurance Company, to recover the amount due on a policy, dated February 8th, 1834, for the sum of $10,000, effected by Barrett & Brown, "on coffee, on board brig Soule, at and from Boston to Antwerp ; " and that this policy was transferred to the plaintiff by Barrett & Brown, with the assent of the American Insurance Company.

The defendants also offered in evidence a writing, dated in December, 1835, by which it was agreed between the defendants and the American Insurance Company, that the two policies effected by Barrett & Brown upon property on board the brig Soule, should be considered as simultaneously executed by the two companies.

To the admission of this evidence the plaintiff objected ; but the objection was overruled.

In each of the two policies assigned to the plaintiff, which are in the form now in use in Boston, it is " agreed, that if the insured shall have made any other insurance upon the property aforesaid, prior in date to this policy, then the said insurance company shall be answerable only for so much as the amount of such prior insurance may be deficient towards fully covering the property at risk, &c. ; and in case of any insurance upon the said property, &c. subsequent in date to this policy, the said insurance company shall nevertheless be answerable, to the full extent of the sum by them herein insured, without right to claim contribution from such subsequent insurers ; and shall accordingly be entitled to retain the premium by them received, in the same manner as if no such subsequent insurance had been made."

The defendants also called William J. Hubbard, Esq. as a witness, who testified, that he was of counsel for the American Insurance Company in the action against them ; and that they paid into court the sum of $ 4345·28, under the common rule, which, with the amount of the set-offs claimed by them, con sisting of the balance due on a bottomry bond on the brig Tim, and sundry premium notes, was equal to one half of the sum of $ 17,185·19, the amount of the invoice of coffee ; and that the plaintiff had taken the money out of court.

The plaintiff objected to the admission of this testimony , but the objection was overruled.

A verdict was taken for the plaintiff by consent, for the sum of $ 10,500, which was to be reduced or enlarged according to the opinion of the Court.

The case was argued in writing.

C. P. Curtis and B. R. Curtis, for the plaintiff. We object to the deduction of any of the premium notes given after the assignment of the policy. Jenkins v. Brewster, 14 Mass. R. 291. The reservation in the memorandum of the defendants referred to their then existing rights. The right to create new credits was not expressly reserved and cannot be presumed.

The notes taken by the defendants for premiums on the Kent, cannot be deducted from the plaintiff's money, that is, paid with his funds, because there is in the hands of the de

fendants a fund expressly applicable to those debts, to wit, the amount due to Barrett & Brown, for general average and partial losses under the policies for which those notes were given. The Court will not permit the defendants to liberate the funds of Barrett & Brown from a debt due by them, and throw the burden on the funds of the plaintiff, thus enabling Barrett & Brown to evade the effect of their assignment, which was made for a valuable consideration.

The same argument applies to the note No. 3.

The bottomry bond is not to be deducted. The defendants admit, that the partial and general average losses ought to be applied to this bond. The plaintiff does not object to this, after first deducting the unpaid premium notes of Barrett & Brown. But the balance of the bond cannot be set off in this manner without first resorting to the security which the defendants hold. They have or had a mortgage on the vessel, and two sureties on the bond, one of whom is shown to be alone able to pay the whole amount. The defendants will not be permitted to pass over the specific securities taken for this debt, and resort for payment to the plaintiff, who never entered into any agreement to become surety. *Drinkwater* v. *Goodwin*, 1 Cowp. 255. If the plaintiff is a surety, he is so only in proportion to his demands against the defendants ; and if they part with the security in their hands pledged for the debt, the surety shall have the benefit of it ; *Baker* v. *Briggs*, 8 Pick. 122 ; *Commonwealth* v. *Vanderslice*, 8 Serg. & R. 457 ; *Lichtenthaler* v. *Thompson*, 13 Serg. & R. 157 ; and a surety in Massachusetts has the same advantages at law that he would have in equity, if sued alone. *Baker* v. *Briggs*, 8 Pick. 122.

The defendants have omitted to take possession of the Kent, and have permitted the assignee of Barrett & Brown to sell her, the defendants giving notice of their lien. As the defendants do not show what she was worth, it will be presumed, that a vessel on which the sum of $8000 was lent, was of sufficient value to secure the balance of the bond.

If the plaintiff is a surety to the defendants for Barrett & Brown, it is by force of a contract made subsequently to the engagement of Gibson and Adams ; the plaintiff is, in such case, a surety for those sureties as well as for Barrett &

Brown ; and as to him they are all principals. *Craythorne* v *Swinburne*, 14 Ves. 160. Equity will restrain the creditor from proceeding against a surety until he has resorted to the principals and their securities in his hands. Theobald on Pr. & Surety, 256 ; *Cottin* v. *Blane*, 2 Anstr. 544 ; *Wright* v. *Nutt*, 3 Bro. C. C. 326 ; *Same* v. *Same*, 1 H. Bl. 136 ; *Wright* v. ·*Simpson*, 6 Ves. 728. And if the surety pays the debt, he has a right in equity to stand in the place of the creditor, as to all securities held or acquired by him. *Wright* v. *Morley*, 11 Ves. 12 ; Theob. on Pr. & Surety, 252.

It cannot be argued, that the plaintiff has received from the American Insurance Company one half of the sum insured by both companies. That company paid a sum of money into court, without specifying the particular items composing it. The plaintiff took out the sum so paid, as he had a clear right to do. *Malcolm* v. *Fullerton*, 2 T. R. 645 ; *Vaughan* v. *Barnes*, 2 Bos. & Pull. 392 ; *Le Grew* v. *Cooke*, 1 Bos. & Pull. 332. The sum paid into court was $4345 28, which is about one quarter of the amount justly due to the plaintiff from the two companies ; for the Court cannot settle the disputed claims of the plaintiff and the American Insurance Company in this case.

The plaintiff claims the right to recover of the defendants the whole amount of the sum insured by them. Where there are several policies on the same insurable interest, the insured may elect from whom to claim payment ; and the underwriter who pays, may claim contribution from the others. 1 Phill. on Ins. 326, 327 ; 2 Phill. on Ins. 224 ; *Potter* v. *Marine Ins. Co.*, 2 Mason, 475 ; *Lucas* v. *Jefferson Ins. Co.*, 6 Cowen, 635.

*Parsons* and *Stearns*, for the defendants. As to the first position of the plaintiff, the parties to the policy agree that there shall be deducted from any loss payable under it, " all sums due to the company from the insured when such loss *becomes due.*" The plaintiff, by agreement with the company, puts himself in the place of Barrett and Brown, *when the loss is payable*, taking the risk of any intermediate transactions entered into between them and the insurers in good faith and without the purpose of defrauding him.

It is said that the defendants have different securities, and that the Court will require, that the securities be so apportioned among the debts as justice may require. The defendants stand on their legal rights, they do not choose to substitute an inferior security for a more valuable one. The money in their own hands is the best possible security, and they therefore claim to deduct from this fund the whole amount due to them from Barrett & Brown. *Union Bank* v. *Laird*, 2 Wheaton, 390.

The claim of the plaintiff is, substantially, that this Court exercise chancery powers in this case, as if all the parties in interest were brought before the Court by a bill of interpleader. Even if the Court had such powers, they could not safely be exercised here. But the Court have no such powers. *Dwight* v. *Pomeroy*, 17 Mass. R. 327.

The plaintiff is not a surety excepting so far as he becomes one by his interest in funds now in the hands of the defendants and subject to their lien for their demands against Barrett & Brown. In common parlance, a man holding this relation would hardly be called a surety ; and certainly this is not such a suretiship, as the principles and authorities referred to by the plaintiff contemplate.

The question in this case is not between *funds* and *sureties*, but between independent funds. The plaintiff, in fact, asks the Court to assume the peculiar chancery power of apportioning the various funds or securities among the various debts or claims, as may be equitable to all the parties in interest. We regard this as peculiarly a chancery power ; for, at law, the defendants may elect the fund out of which they will satisfy their debt. This is nothing more than the converse of the principle, that where a general payment is made, the creditor may, *at any time*, apply it to whichever of the debts due from the payer he may elect. *Mayor &c. of Alexandria* v. *Patten*, 4 Cranch, 317 ; *Gwinn* v. *Whitaker*, 1 Har. & Johns. 754 ; *Smith* v. *Screven*, 1 M'Cord, 368 ; *Bacon* v. *Brown*, 1 Bibb. 334. But it is distinctly settled, that *in chancery*, a creditor may take and hold divers securities for his debt, and that he cannot be compelled to give up either of them until *his whole debt* is paid. *Union Bank* v. *Laird*, 2 Wheaton, 390.

The plaintiff claims a right to demand the whole amount of the policy, of either of the two insurance companies, whose policies are simultaneous, because such is the strict rule of law. But the assured has no right to elect to take one half of his loss from one of the assurers, and then elect to take more than the other half from the other insurer. By taking half from either, he elects to divide his claim between them. The plaintiff, by taking the money paid into court by the American Insurance Company, has made his election to divide his claim between the two companies.

The defendants therefore suppose, that the plaintiff can recover from them only one half of the sum due by both companies on the Soule ; and that they are entitled to deduct from this half all the debts due to them from Barrett & Brown, including the whole amount lent on the barque Kent, with the accruing interest. This amount will be diminished by the loss payable on the Kent, if the Court shall think such diminution proper. It is to be understood, however, that the defendants do not admit this, but refer the question to the Court.

*July 2d.*      SHAW C. J. delivered the opinion of the Court. It appears, in the present case, that two policies were made on property on board the brig Soule, from Boston to Antwerp, in behalf of Barrett & Brown, bearing date the same day, one by the defendants and one by the American Insurance Company, each for the sum of $10,000. The property at risk amounted to the sum of $17,185·19. Both policies therefore together exceeded the amount at risk, by nearly the sum of $3000.

By the terms of both policies, they being in the form now in use in the city of Boston, it was stipulated that the policy should not be held to cover any risk already covered by a prior policy ; and that the policy, so far as it covered risks not already covered by any prior policy, should not be considered as in any respect affected by any subsequent policy. Had it appeared, therefore, by the facts in the present case, that the policy at the American Insurance Office was made prior to the present, this would, by force of the above clauses, have been available as a substantive contract of assurance for the amount of $7185·19 only, being the balance of interest not covered

by the prior policy. Or had it appeared, that the policy at the American Insurance Office was taken after the present, this would have stood as an available insurance to its amount, $ 10,000. And being of the same date, it would have been open to proof which was in fact executed first, so as to give effect to these clauses in the policies. But no such proof has been offered, and no fact is stated in the report from which any priority can be inferred ; on the contrary, the two companies have agreed between themselves to consider and adjust them, as if made simultaneously, and we consider that the argument has proceeded on the same ground, without objection on the part of the plaintiff.

Treating these policies then as in fact made at the same time, the clause in regard to priority is wholly inoperative , and then as to the amount of the difference between the sum insured and the sum at risk, it is the case of a double assurance, that is, the assured has an obligation from two or more parties to perform the same thing, at the same time. When this is the case, the party holding such double assurance, may in the outset, and before making any election, consider each debtor as liable to bear a proportionate part of the common burden, and recover accordingly ; or he may require either of the parties liable, to pay the whole, and then it follows as a rule of law, founded upon the broadest principles of equity, that where one of two parties has paid the whole of a debt, for which each was originally and ultimately liable, the party who has paid the whole or a disproportionate part of the common debt, shall have a remedy against the other for a contribution, so that the burden may be borne equally according to their respective liabilities. In the present case, it appears, that the plaintiff is the assignee of both policies, that suits were commenced on both policies, and entered in court, by the plaintiff at the same time. * It further appears, that both the defendant companies claimed certain deductions by way of payment or set-off, that the American Insurance Office, in the suit against them, considering that they were liable for half the actual loss, and not contesting the right of the plaintiff to claim what was

---

* See *Wiggin* v. *American Insurance Company, post, p.* 158.

actually due as between them and Barrett & Brown, the original party assured, but claiming certain deductions, made an estimate of the amount actually due, by charging themselves with one half of the actual loss, and making deductions to a certain amount, struck a balance, and paid into court the sum of $ 4345·28, computed upon that basis ; and the plaintiff took the money out of court.   The plaintiff being the assignee of both parties, it does not appear that it can make any difference to him, whether he elects to take one half of the amount which he is entitled to recover from each office, or $ 10,000 from the one, and $ 7000 from the other.   Under the circumstances of the case, therefore, we consider the taking the money out of court, as *primâ facie* evidence, that the plaintiff acceded to the proposal of the two companies to consider each as responsible for one half of the sum actually at risk, and made his election accordingly to adjust the loss in the present case upon that basis.

If it is otherwise, if there is any mistake on this point, which the plaintiff wishes to have more fully considered, judgment must be suspended until the parties can be further heard.

Considering then that the defendant company are liable on their policy for one half the amount at risk, say $ 8592·59, with interest to be computed, then the material questions controverted between the parties arise, what sums the defendant company have a right to deduct, in order to ascertain the balance due.   In the first place it is proper to consider the contract between the parties to this suit.   Had it been a mere assignment in equity, the suit must have been commenced in the name of Barrett & Brown, and all equitable deductions would have been made.   But besides the general rule of law, that an assignment of a chose in action cannot be made at law, so as to enable the assignee to sue in his own name, there is a clause in the policy, which prohibits the assured from assigning the policy without the consent of the underwriters.   The consent of the defendant company in the present case was essential, to enable the plaintiff to maintain his action, and that being given upon terms, by his acceptance of it the plaintiff assents to and becomes bound by the terms.   The policy was made in February, 1834, assigned to the plaintiff in June, 1834, and

.he defendants assented to it by a memorandum in writing, <span>Wiggin</span> " reserving to themselves all the rights expressed in the policy, <span>v.</span> regarding premium notes, debts, &c." The plaintiff, by as- <span>Suffolk</span> senting to these terms, agreed that all debts due to the office <span>Ins. Co.</span> snould be deducted from the amount due on this policy. The substantial effect of such an assignment under such a reservation is, that the defendants promise to pay the plaintiff the same amount, which but for the assignment would be payable to Barrett & Brown. The effect is nearly if not precisely the same as the assignment of a chose in action, without the express concurrence of the debtor, but with notice to him, which effect would be, that the assignee must sue in the name of the assignor, that all equitable payments, set-offs, and deductions, which the debtor might make as against the assignor, may be made, but that any release or discharge given by the assignor after notice of the assignment will not avail, and any debt contracted after such notice cannot be set off. By the particular terms of the reservation made by the defendants, in their assent to this assignment, we were at first rather inclined to the opinion, that small premium notes, taken in the ordinary course of business and in good faith, before any failure on the part of Barrett & Brown, might be deducted ; but this applies only to two small notes subsequent to the assignment, one for $ 158, dated September 1834, and one for $1, dated October 1834, and as to these the question becomes wholly immaterial, upon the considerations hereafter stated.

The assignment then was made by the assured, with the assent of the defendant company, and accepted by the plaintiff, reserving all rights expressed in the policy regarding premium notes, debts, &c. By the terms of the policy, the defendants, on the happening of a loss, and in liquidating it, were to have a right to deduct from it, all premium notes and other debts due to the office. But, supposing that this reservation should be construed strictly, and be limited to all debts, which should become due in virtue of contracts and engagements then entered into, and dealings then had, it appears by the statement of facts, that in virtue of two policies made prior to this assignment, there was a loss due from the defendant company to Barrett & Brown. On the liquidation of that loss, the defend-

ants had a right, by the terms of the policies, to deduct all premium notes due to the office, as well those afterwards as those previously made. And neither the plaintiff nor any other person having had an assignment of those policies, there was nothing to interfere with the general right of the defendants, as against Barrett & Brown, to deduct their premium notes from that loss.

We consider then, that the effect of this assignment was to make the defendants liable to the plaintiff for any loss which might occur, on the policy on property shipped by the brig Soule to Antwerp, first deducting any premium notes or debts due to the office, in virtue of contracts then subsisting. But in order to ascertain what those debts are, we think the defendants are bound to give credit for all sums due to Barrett & Brown, growing out of the same dealings, and that the balance only is the debt due, and that the plaintiff is entitled to have those credits given to Barrett & Brown in order to reduce the debt, which by the reservation they have a right to deduct from the policy assigned to him.

It appears that there is due to Barrett & Brown, from the defendant company, the sum of $4,995·05, for partial loss and general average on the Kent. From this sum is to be deducted notes Nos. 1 and 2, for premiums on the same policies; also the four other premium notes, because though given after the policies on the Kent, yet by the terms of those policies the defendants, on liquidation, were to deduct all premium notes, past and future, and there was no assignment to any third person to interfere with this general right.

The balance thus ascertained, of the loss due from the defendants to Barrett & Brown, is then to be deducted from the amount due to the defendants by Barrett & Brown on the bottomry bond.

This leads to the most important question in the cause, which is, whether the defendant company have a right to set off the amount due to them on the bottomry bond, against the claim of the plaintiff in this action, and the Court are all of opinion, that they have this right. This bottomry bond was dated, not only before the assignment, but before the policy now sued upon was made It comes, therefore, within the

terms of the reservation. It was a debt due by Barrett & Brown, as principal debtors, to the defendants. The argument on the part of the plaintiff is, that the defendants had two other remedies for this sum, to which they should first have resorted, namely, the mortgage on the ship, and the sureties on the bond, who are proved to be solvent. But we think that these were mere collateral securities and remedies, to which the defendants might, but were not bound to resort. Where a creditor has a lien on two distinct funds, he may resort to either, although other persons may have subsequent claims, so that his election may benefit one in preference to another. A court of law will not oblige a creditor so to marshal his claims, as to charge one fund and release another, where both are liable. *Lupton* v. *Cutter*, 8 Pick. 298 ; *Union Bank* v. *Laird*, 2 Wheaton, 390. But this case stands somewhat stronger, than that of the right of a creditor to elect, among different securities, to which he will look. The plaintiff took this assignment subject to the debts due from Barrett & Brown to the office ; this was a debt due on a bond then existing, and which afterwards became payable ; and, therefore, by the terms of his assent to the assignment, the defendants had a right to deduct this debt, without first resorting either to the mortgage on the vessel, or to the sureties on the bond